UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROCKY L. PALMER,                )      NO. EDCV 09-0803-CT
                                )
          Plaintiff,            )      OPINION AND ORDER
                                )
     v.                         )
                                )
MICHAEL J. ASTRUE,              )
Commissioner of                 )
Social Security,                )
                                )
          Defendant.            )
_____ )

     For the reasons set forth below, it is ordered that the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. Section 405(g) to defendant Commissioner of Social Security ("the Commissioner") for further administrative action consistent with this opinion and order.

### SUMMARY OF PROCEEDINGS

     On May 1, 2009, plaintiff, Rocky L. Palmer ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act").   The parties consented to proceed before the magistrate judge. On July 28, 2009, plaintiff filed a brief with points and authorities in support of remand or reversal. On November 2, 2009, the Commissioner filed a brief

1  in support of defendant's answer.

2  ## SUMMARY OF ADMINISTRATIVE RECORD

3  ### 1.   Proceedings

4  On June 14, 2006, plaintiff filed an applications for disability

5  insurance benefits and Supplemental Security Income ("SSI"), (TR 98-100,

6  103-08),[1] alleging disability since May 1, 2006, due to HIV, emphysema,

7  asthma, and depression. (TR 120.) The applications were denied initially

8  and upon reconsideration. (TR 59-63, 65-70.)

9  On January 22, 2007, plaintiff filed a request for a hearing before

10  an administrative law judge ("ALJ"). (TR 73.) On December 11, 2007,

11  plaintiff, represented by an attorney, appeared and testified before an

12  ALJ. (TR 17-55.) The hearing was continued to allow plaintiff to submit

13  additional medical evidence. (See TR 53-54.) A supplemental hearing was

14  held on February 26, 2008. (TR 421-49.) At the supplemental hearing,

15  plaintiff again testified briefly, and the ALJ also considered

16  vocational expert ("VE") testimony, the testimony of both a physical

17  medical expert ("ME") and a psychiatric medical expert ("psychiatric

18  ME"), and the testimony of plaintiff's mother.  (TR 425-30, 430-435,436-

19  38, 438-446.)

20  Shortly thereafter, the ALJ issued a decision that plaintiff was

21  not disabled, as defined by the Act, because he was able to perform a

22  limited range of light level, unskilled work, and that he thus was not

23  eligible for benefits.  (TR 6-14.)  On August 5, 2008, plaintiff filed

24  a request with the Social Security Appeals Council to review the ALJ's

25  

26  _____

[1]   "TR" refers to the transcript of the record of
27  administrative proceedings in this case and will be followed by
the relevant page number(s) of the transcript.

28

1    decision.  (TR 16.)  On March 6, 2009, the request was denied.  (TR 1-

2    3.)  Accordingly, the ALJ's decision stands as the final decision of the

3    Commissioner.

4       Plaintiff subsequently sought judicial review in this court.

5      **2.**    **Summary Of The Evidence**

6       The ALJ's decision is attached as an exhibit to this opinion and

7    order and materially summarizes the evidence in the case.

8                     **PLAINTIFF'S CONTENTIONS**

9       Plaintiff essentially contends the ALJ erred when he:

10    1.    Held that plaintiff is capable of performing the jobs of an

11         electronics assembler and hand packer;

12    2.    Failed properly to consider the lay witness testimony;

13    3.    Failed properly to consider the treating physicians' opinions; and,

14    4.    Found that plaintiff's impairment did not meet or medically equal

15         the Social Securities listings for herpes, section 14.08D.[2]

16                     **STANDARD OF REVIEW**

17       Under 42 U.S.C. §405(g), this court reviews the Commissioner's

18    decision to determine if: (1) the Commissioner's findings are supported

19    by substantial evidence; and, (2) the Commissioner used proper legal

20    standards.  <u>Macri v. Chater</u>, 93 F.3d 540, 543 (9th Cir. 1996).

21    Substantial evidence means "more than a mere scintilla," <u>Richardson v.</u>

22    <u>Perales</u>, 402 U.S. 389, 401 (1971), but less than a preponderance.

23    <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).

24       When the evidence can reasonably support either affirming or

25

26       [2] This refers to one category of impairments listed in the

27 "Listing of Impairments," which are set forth in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1.

28                   3

1  reversing the Commissioner's conclusion, however, the Court may not
2  substitute its judgment for that of the Commissioner.   Flaten v.
3  Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir.
4  1995).  The court has the authority to affirm, modify, or reverse the
5  Commissioner's decision "with or without remanding the cause for
6  rehearing."   42 U.S.C. § 405 (g).   Remand is appropriate where
7  additional proceedings would remedy defects in the Commissioner's
8  decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

9                              **DISCUSSION**

10     **1.    The Sequential Evaluation**

11     A person is "disabled" for the purpose of receiving social security
12  benefits if he or she is unable to "engage in any substantial gainful
13  activity by reason of any medically determinable physical or mental
14  impairment which can be expected to result in death or which has lasted
15  or can be expected to last for a continuous period of not less than 12
16  months."   42 U.S.C. §423(d)(1)(A).

17     The Commissioner has established a five-step sequential evaluation
18  for determining whether a person is disabled.  First, it is determined
19  whether the person is engaged in "substantial gainful activity." If so,
20  benefits are denied.

21     Second, if the person is not so engaged, it is determined whether
22  the person has a medically severe impairment or combination of
23  impairments.   If the person does not have a severe impairment or
24  combination of impairments, benefits are denied.

25     Third, if the person has a severe impairment, it is determined
26  whether the impairment meets or equals one of a number of "listed
27  impairments." If the impairment meets or equals a "listed impairment,"

28                                   4

1  the person is conclusively presumed to be disabled.

2      Fourth, if the impairment does not meet or equal a "listed
3  impairment," it is determined whether the impairment prevents the person
4  from performing past relevant work.   If the person can perform past
5  relevant work, benefits are denied.

6      Fifth, if the person cannot perform past relevant work, the burden
7  shifts to the Commissioner to show that the person is able to perform
8  other kinds of work.   The person is entitled to benefits only if the
9  person is unable to perform other work. 20 C.F.R. §§ 404.1520, 416.920;
10 Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

11     2.   **Issues**

12          A.   **Capability to perform jobs (Issue # 1)**

13     Plaintiff  first  alleges  the  ALJ  erred  at  step  five  of  the
14 sequential evaluation in finding that plaintiff's residual functional
15 capacity ("RFC") permits him to perform the jobs of electronics
16 assembler and hand packer.

17     More specifically, at finding no. 5, the ALJ found plaintiff
18 retains the RFC to perform a range of "light" work, as that term is
19 defined  in  20  C.F.R.  §§  404.1567(a),  416.967(a),  with  additional
20 limitations, including that he "must avoid work around . . . motorized
21 or unprotected machinery." (TR 11.)   Within finding no. 10, the ALJ
22 found that plaintiff is not disabled because the VE testified he can
23 "perform the requirements of representative occupations such as an
24 electronics assembler (unskilled, light; 2,100 regionally, 40,000
25 nationally) and hand packer (unskilled, light; 37,000 regionally,
26 472,000 nationally)." (TR 13.)

27     According to the Dictionary of Occupational Titles ("DICOT")

28                                      5

however, the requirements of the job of electronics assembler include, among other duties: "[c]rimps, stakes, screws, bolts, rivets, welds, solders, cements, *press fits, or performs similar operations* to join or secure parts in place, *using handtools, power tools, machines, and equipment;*" and, "*[t]ends machines* that press, shape, or wind component parts." See DICOT 726.684-018 (emphasis added). Although, as defendant points out, the DICOT function-by-function description of this job indicates that the activity of "Moving Mech. Parts" is "not present" or "does not exist" in the electronics assembler position, the plain definition of this job appears to exceed the RFC as it was articulated by the ALJ, which purports to limit plaintiff to <u>no</u> contact with either motorized <u>or</u> unprotected machinery. (TR 11.)

Similarly, the job of hand packer is rated as a requiring "medium" strength and includes, among other duties: "[s]tarts, stops, and regulates speed of conveyor." See DICOT 920.587-018. This job likewise appears to exceed plaintiff's RFC as articulated in the decision.

Although the ALJ may elect to adopt VE testimony that is in conflict with the DICOT if the VE reasonably explains the conflict and there is a basis for relying on the expert rather than on the DICOT, see Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007), here the VE testified that there was not, in fact, any conflict between his testimony and the DICOT, (TR 449).

Consequently, while it may be that other light level, unskilled jobs exist for someone with plaintiff's additional limitations, because the VE did not identify any other such jobs, (see TR 448), remand is appropriate for the ALJ either to clarify plaintiff's RFC limitations to the extent they concern machinery, or to take supplemental VE testimony

1  to ascertain whether there is a discrepancy in this regard and, if so,

2  whether any other jobs exists in significant numbers that plaintiff can

3  perform.

4  **B.   Lay witness testimony (Issue # 2)**

5  Plaintiff next contends the ALJ erred by discounting the testimony

6  of plaintiff's mother – to the effect that plaintiff tires easily,

7  suffers from pain and shortness of breath, is isolated, and suffers from

8  panic attacks and listlessness – based solely on her relationship to

9  plaintiff.   (TR 12.)

10  The record belies this contention.

11  Although descriptions "by friends and family members in a position

12  to observe [plaintiff's] symptoms and daily activities have routinely

13  been treated as competent evidence," Sprague v. Bowen, 812 F.2d 1226,

14  1232 (9th Cir. 1987), an ALJ may reject the statements of a lay witness

15  based upon reasons that are "germane" to that witness, Stout v. Comm'r

16  of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)(citations

17  omitted) (citations omitted).

18  The mere fact that a witness is a family member does not alone

19  constitute a germane ground to reject a lay witness's sworn statements

20  wholesale. See Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996). An

21  ALJ may, however, reject a lay witnesses testimony if the ALJ finds the

22  witness to be biased. E.g., Greger v. Barnhart, 464 F.3d 968, 972-73

23  (9th Cir. 2006) (the fact that girlfriend's "close relationship" with

24  plaintiff "possibly" influenced her desire to help him was a germane

25  reason to disregard her sworn testimony). Other reasons "germane" to a

26  particular witness include that the witness's testimony is contradicted

27  by the medical evidence of record, Bayliss v. Barnhart, 427 F.3d 1211,

28

7

1   1218 (9th Cir. 2005), or that the witness has made contradictory or
2   inconsistent statements, e.g., Lewis v. Apfel, 236 F.3d 503, 512 (9th
3   cir. 2001).

4       Here, the ALJ found the mother's testimony and letter were not
5   entirely credible for two reasons. First, as the ALJ found with respect
6   to plaintiff's statements, because the limitations to which she
7   testified are not supported, or are flatly contradicted, by the
8   objective medical evidence. (TR 12.) This finding is supported by
9   substantial evidence and, significantly, plaintiff does not challenge
10  the ALJ's assessment of his own credibility. Specifically, for example,
11  treatment and examination records document minimal objective signs of
12  fatigue and mental impairment, indicate plaintiff often did well without
13  significant complaints, and that plaintiff had "fairly normal" physical
14  and mental status examinations. (TR 11, 196-201, 263-70; see also 205-
15  11, 260-62, 271-81.) Laboratory testing indicated plaintiff's AIDS
16  immediately responded well to medication. (TR 9, 341-420, 428.)
17  Medical evidence indicates plaintiff admitted to active alcoholism, and
18  to using marijuana and cocaine, during a two-month time period when his
19  mental condition seemed to deteriorate. (E.g., TR 268, 331.) Although
20  plaintiff and his mother contend he has difficulty breathing, the record
21  establishes that plaintiff continues to smoke, and plaintiff has had
22  normal chest x-rays. (TR 227.) Moreover, the medical experts and state
23  agency reviewing physicians all concluded that the objective evidence
24  failed to support a finding that these limitations were as extreme as
25  alleged. (See TR 426-29, 432-33.)

26      Second, the ALJ discounted plaintiff's mother's statements because
27  they are likely biased. (TR 12.) While the court agrees with plaintiff
28

1  that this finding might not withstand scrutiny were this the sole

2  justification offered by the ALJ, given that the ALJ offered abundant

3  other evidence casting into doubt the extent of limitation to which she

4  testified, the court finds the credibility determination was, as a

5  whole, supported by substantial evidence. See Carmickle v. Comm'r, 533

6  F.3d 1155, 1162, 1163 (internal quotations omitted) (an error by the ALJ

7  with respect to one or more factors in a credibility determination be

8  harmless if there "remains substantial evidence supporting the ALJ's

9  conclusions" in that regard). Furthermore, the ALJ, and not this court,

10 had the opportunity to evaluate the mother's demeanor in conjunction

11 with her statements, and a review of that testimony suggests the ALJ's

12 finding was not an unreasonable characterization. (See TR 438-46.)

13 Where the evidence is susceptible of more than one rational

14 interpretation, it is the Commissioner's conclusion which must be

15 upheld. Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985).

16     There is no material legal error here, and, consequently, remand is

17 not warranted with respect to this issue.

18     C.   **Treating physicians' opinions (Issue # 3)**

19     Plaintiff next contends the ALJ failed to articulate legally

20 sufficient reasons for declining to give controlling weight to the

21 opinions of his treating physician Thuy Nguyen, M.D., and his treating

22 psychiatrist Mark Peterson, M.D.

23     The opinion of a treating physician generally should be given

24 deference. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.1987)

25 (citations omitted). When the physician's opinion conflicts with the

26 physician's own treatment notes, however, the ALJ is not required to

27 adopt it. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).

28

1  Furthermore, the opinion of the treating physician may likewise be
2  rejected based upon a conflict with the reports of other physicians of
3  record – even those of non-treating physicians – provided that the ALJ
4  gives "specific, legitimate reasons for doing so that are based on
5  substantial evidence in the record." Andrews v. Shalala, 53 F.3d 1035,
6  1041 (9th Cir.1995). The opinion of a non-examining, testifying medical
7  advisor may serve as substantial evidence when it is supported by other
8  evidence in the record and consistent with it.   Morgan v. Comm'r of
9  Social Sec. Admin., 169 F.3d 600-01; Andrews, 53 F.3d at 1041.

10      The ALJ can meet the burden in this regard by "setting out a
11  detailed and thorough summary of the facts and conflicting clinical
12  evidence, stating his interpretation thereof, and making findings."
13  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989)(citation
14  omitted).

15      Where medical reports are inconclusive, questions of credibility
16  and resolution of conflicts in the record are functions "solely" of the
17  Commissioner. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)
18  (citation omitted).

19      The ALJ met these standards here.
20                  a.   Treating physician Dr. Nguyen
21      At the behest of plaintiff's attorney, on December 17, 2007, Dr.
22  Nguyen completed a form in which he assessed plaintiff's ability to do
23  work-related activities; in it, he opined plaintiff is operating under
24  significant functional limitations.   (TR 314-16.)   The ALJ declined to
25  give any weight to that assessment, noting that no other physician of
26  record opined such extreme limitations, and pointing out inconsistencies
27  between Dr. Nguyen's opinion and the independent examination and

28

1  findings of the consultative examiner Jamshid Taminy, M.D., (TR 195-

2  205), and with the medical record itself, and, concomitantly, the

3  assessments of the medical record as a whole made by the testifying ME,

4  (TR 426-27), and state agency reviewing physicians T.N. Do, M.D., and

5  Diane Rose, M.D., (TR 206-11, 261), whose opinions are consistent with

6  substantial evidence of record.   The ALJ also discounted Dr. Nguyen's

7  functioning  assessment  because  it  was  inconsistent  with  his  own

8  treatment notes, which indicated that plaintiff's AIDS was responding

9  well to treatment.   (TR 8-9, 238, 242, 390.)

10        Accordingly, there is no material legal error here.

11              b.    Treating psychiatrist Dr. Peterson

12     Dr. Peterson diagnosed plaintiff with severe depression and, in a

13  letter dated March 3, 2008, opined plaintiff is unable to work due to

14  poor memory and concentration and fatigue.   (TR 318.)

15        Although the ALJ agreed with Dr. Peterson that plaintiff suffers

16  from depression, he declined to credit Dr. Peterson's findings to the

17  extent he suggests plaintiff's depression caused functional limitations.

18  The  ALJ found Dr. Peterson's opinion is inconsistent with the opinions

19  of the consultative examiner, Romualdo Rodriguez, M.D. (TR 263-69), and

20  the assessment of the testifying psychiatric ME, (TR 430-31), and state

21  agency reviewing psychiatrists C.L. Luce, M.D., and K.J. Loomis, M.D.,

22  based upon their review of the record as a whole, (TR 260-62, 271-81),

23  finding that plaintiff is stable and has only mild mental functional

24  limitations.    Dr. Peterson's opined restrictions are, furthermore,

25  inconsistent with his treatment notes, which indicate plaintiff was

26  "generally  well  groomed,  oriented  in  all  spheres,  and  calm  and

27  cooperative," (TR 376-86.)   Indeed, as the ALJ found, it appears that

28
                                      11

1  plaintiff is stable when on his anti-depressant medication, (TR 268-69),

2  though he has been found to be non-compliant with his medication, (TR

3  323).   In addition, the ALJ found that plaintiff's depression was

4  exacerbated by active poly-substance abuse. (TR 268.)

5      In accordance with this, the RFC includes only mild mental

6  functional limitations, consistent with the limitations opined by the

7  psychiatric examiner, psychiatric ME, and reviewing psychiatrists, all

8  of which are consistent with substantial evidence of record.   There is

9  no material legal error here, and remand is not warranted on this basis.

10     **D.   Listings (Issue # 4)**

11     Last, plaintiff contends the ALJ erred in finding that plaintiff's

12  herpes, which he contends is significantly exacerbated due to his AIDS,

13  does not meet or medically equal listing 14.08D.[3]

14     If the ALJ concludes at step two of the sequential evaluation that

15  the plaintiff's impairments are "severe" within the meaning of the Act,

16  the ALJ proceeds at step three of the sequential evaluation to compare

17  the plaintiff's impairments to the impairments listed in the "Listing of

18  Impairments" set forth in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1.

19     In other words, the mere diagnosis of an impairment listed in

20  Appendix 1 is not sufficient to sustain a finding of disability.   It

21  must be shown that the requirements for that impairment are found in the

22  medical record.  Key v. Heckler, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

23  _____

24     [3]  The ALJ also found plaintiff's AIDS did not meet or equal
    listing 14.08, (see TR 10), and plaintiff does not challenge that
25  portion of the ALJ's step three determination here. Nor would
    there be cause for him to do so.   The ME testified that
26  plaintiff's AIDS, though severe, did not meet or equal a listing,
    (TR 428), and this testimony is supported by substantial evidence
27  in the record, (see TR 341-420).

28                                12

1       To meet the requirements for listing 14.08D, a plaintiff must

2   provide evidence of a viral infection, such as herpes simplex, that

3   causes oral, genital, perianal "[m]ucocutaneous infection," i.e., the

4   lesions that constitute herpes' primary symptom, "lasting **for one month**

5   **or longer**."   20 C.F.R., Part 404, Subpt. P, Appendix 1, § 14.08D

6   (emphasis added).

7       Plaintiff testified at the initial hearing that he has herpes and

8   gets blisters in his anal area only about twice every month.   (TR 31.)

9   The record does not establish any greater impairment than this and,

10  moreover, indicates that even these flare-ups took place only over a

11  three-month period, as plaintiff was diagnosed with only a history of

12  herpes as of August 31, 2006.   (TR 216.)

13      Based upon this record, the ALJ found, therefore, that plaintiff

14  did not provide evidence suggesting his herpes outbreaks have lasted the

15  requisite time period to meet or equal the listing.   (TR 9) (the herpes

16  is a "transient condition with only occasional outbreaks.")   Indeed,

17  based upon his own review of the medical evidence, impartial medical

18  expert Samuel Landau, M.D., testified that "nothing . . . in the

19  records" suggests plaintiff suffers from listing-level herpes. (TR 429.)

20      Accordingly, the ALJ's finding in this regard is supported by

21  substantial evidence and free from material legal error.   Remand is not

22  warranted on this basis.

23      **REMAND IS APPROPRIATE IN THIS CASE**

24      The decision whether to remand a case for additional evidence is

25  within the discretion of the court.   <u>Sprague v. Bowen</u>, 812 F.2d 1226,

26  1232 (9th Cir. 1987).   Remand is appropriate if the record is incomplete

27  and additional proceedings would remedy defects in the Commissioner's

28

decision.   <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989).

Having considered the record as a whole, it appears that the present record is insufficiently developed.

### CONCLUSION

Accordingly, it is ordered that the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. §405(g) to the Commissioner for further administrative action consistent with this opinion.

DATED: 11/4/09

_____

CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

**DECISION**

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| | Period of Disability, Disability Insurance |
| Rocky Lamont Palmer | Benefits, and Supplemental Security Income |
| (Claimant) | ████████████ |
| | |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On June 12, 2006, Claimant filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. In both applications, Claimant alleged disability beginning May 1, 2006. The claims were denied initially on August 22, 2006, and upon reconsideration on January 4, 2007. Thereafter, Claimant filed a timely written request for hearing on January 29, 2007 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). Claimant appeared and testified at a hearing held on December 11, 2007, in San Bernardino, California. The hearing was continued to allow Claimant to submit additional medical evidence. A supplemental hearing was held on February 26, 2008. Claimant again appeared and testified. Also appearing and testifying were Samuel Landau, M.D., an impartial medical expert, David Glassmire, M.D., an impartial medical expert, Troy Scott, an impartial vocational expert, and Shirley Palmer, Claimant's mother. Claimant is represented by Bill Latour, an attorney.

## ISSUES

The issue is whether Claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. Claimant's earnings record shows Claimant has acquired sufficient quarters of coverage to remain insured through September 30, 2009. Thus, Claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

6 **EXHIBIT**

Rocky Lamont Palmer    Page 2 of 2

After careful consideration of all the evidence, the undersigned concludes Claimant has not been under a disability within the meaning of the Social Security Act from May 1, 2006 through the date of this decision.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined Claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether Claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether Claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If Claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If Claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether Claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If Claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), Claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine Claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An



Rocky Lamont Palmer                                         Page 3 of 3

individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of Claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether Claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as Claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date disability must be established. In addition, the work must have lasted long enough for Claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If Claimant has the residual functional capacity to do his past relevant work, Claimant is not disabled. If Claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether Claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If Claimant is able to do other work, he is not disabled. If Claimant is not able to do other work and meets the duration requirement, he is disabled. Although Claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates other work exists in significant numbers in the national economy Claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.  Claimant meets the insured status requirements of the Social Security Act through September 30, 2009.**

**2.  Claimant has not engaged in substantial gainful activity since May 1, 2006, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

**3.  Claimant has the following severe impairments: acquired immunodeficiency syndrome and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).**

Claimant is alleging disability as of May 1, 2006. The medical evidence establishes Claimant was diagnosed with human immunodeficiency virus with acquired immunodeficiency syndrome in May 2006 (Exhibit 17F). At that time, Claimant was complaining of persistent fatigue. Claimant's CD4 count was less than 20 and his Viral Load was 170,985. Claimant was

8 EXHIBIT

Rocky Lamont Palmer █████████

immediately started on HIV medication treatment. The medical evidence indicates Claimant's AIDS responded well to treatment. By August 2006, Claimant's CD4 count was 25 and his Viral Load was less than 50. Claimant's Viral Load has remained less than 50, and by February 2008, his CD4 was over 200. Further, Claimant's multiple physical examinations since August 2006 document minimal objective signs related to Claimant's AIDS. These treatment records reflect Claimant often had no significant complaints. Still, Dr. Thuy Nguyen, treating source, has opined Claimant is limited to less than sedentary work (Exhibit 13F).

Claimant underwent an internal medicine consultative examination with Dr. Jamshid Tamiry in August 2006 (Exhibit 1F). Claimant complained of fatigue and HIV diagnosis with a CD4 count of 20. The physical examination was essentially normal. Dr. Tamiry opined Claimant could perform sedentary work based on the examination and his reported symptoms and history. State agency medical consultants reviewed the medical evidence and similarly concluded Claimant could perform a range of sedentary work (Exhibits 2F, 3F).

To clarify the nature and extent of Claimant's physical impairments, the undersigned obtained testimony from Dr. Samuel Landau, an impartial medical expert. Dr. Landau reviewed the medical evidence through Exhibit 13F and concluded Claimant suffered from AIDS. Dr. Landau noted the medical evidence indicated Claimant's AIDS had responded well to treatment. Based on the objective evidence, Dr. Landau opined Claimant's AIDS did not meet or medically equal listing section 14.08 and Claimant could perform a range of light work with restrictions on prolonged standing and walking.

While the medical opinions reflect a difference of opinion regarding Claimant's physical limitations, the undersigned concludes the evidence establishes Claimant's AIDS is a severe impairment within the meaning of the regulations. Additionally, the undersigned acknowledges the medical evidence refers to various other medical conditions such as asthma, emphysema, back pain, and herpes. With Claimant's alleged asthma, emphysema, and back pain, there are no objective findings to establish such medically determinable impairments. Of note, Claimant has had normal chest x-rays (Exhibits 4F, 11F). With his herpes, treatment records indicate this is a transient condition with only occasional outbreaks. As such, the undersigned finds this is not a severe impairment within the meaning of the regulations.

Finally, the medical evidence reflects a history of mental health complaints. Claimant began treating with Dr. Mark Peterson, psychiatrist, in October 2006 (Exhibit 17F). Dr. Peterson diagnosed major depressive disorder. Dr. Peterson has opined Claimant has some marked to extreme functional limitations (Exhibits 13F, 14F). Yet, Dr. Peterson's treatment records indicate Claimant was generally well groomed, oriented in all spheres, and calm and cooperative. The medical evidence indicates some worsening of symptoms around April 2007 (Exhibits 17F, 11F, 16F). At that time, Claimant was transported to the emergency room because of chest pain and anxiety. He was diagnosed with possible anxiety or panic attacks. Claimant also reported he had recently used cocaine. Additionally, Claimant was psychiatrically hospitalized on May 8, 2007 because of his depression symptoms, but he was discharged the next day when it was determined he did not need hospital level of care (Exhibit 16F). Claimant admitted to continued use of alcohol, cocaine, and marijuana at that time. There is no further evidence of emergent care, and there is no further evidence of substance use. At the first hearing, Claimant testified

**9**

EXHIBIT

Rocky Lamont Palmer                               Page 5 of 5

that he had no history of alcohol or drug use. At the second hearing, Claimant testified he had not used alcohol or alcohol for about a year. Claimant continues to treat with medication for his depression.

Claimant underwent a psychological consultative examination with Dr. Romualdo Rodriguez in December 2006 (Exhibit 7F). Claimant complained of depression. He also described a history of alcohol and marijuana abuse, but he denied a history of illegal drug use. Dr. Rodriguez reported Claimant's mental status examination was fairly unremarkable and Claimant appeared stable on antidepressant medication. Dr. Rodriguez diagnosed a depressive disorder and substance use disorder and opined Claimant had only mild functional limitations. State agency medical consultants reviewed the medical evidence and concurred Claimant had only mild functional limitations (Exhibits 6F, 8F).

To clarify the nature and extent of Claimant's mental impairments, the undersigned obtained testimony from Dr. David Glassmire, psychiatrist and impartial medical expert. Dr. Glassmire reviewed the medical evidence through Exhibit 13F. Dr. Glassmire opined Claimant suffered from a depressive disorder and substance use disorder. He noted the discrepancy of opinions between that of Dr. Rodriguez and the State agency medical consultants and that of Dr. Peterson regarding Claimant's functional limitations. Dr. Glassmire noted the medical evidence did not support Dr. Peterson's very restrictive limitations. Dr. Glassmire opined the medical evidence indicated Claimant had mild to moderate functional limitations and Claimant would be able to perform work with three step instructions, occasional non-intense public contact, and no hypervigilance.

Again, while the medical opinions reflect a difference of opinion regarding Claimant's limitations, the undersigned concludes the evidence establishes Claimant's depression is a severe impairment within the meaning of the regulations. As the evidence supports Claimant's allegation that he has not used alcohol, cocaine, or marijuana since around June 2007, the undersigned finds Claimant's substance abuse disorder is not a severe impairment within the meaning of the regulations. Further, while Claimant may have had additional limitations stemming from his substance use disorder prior to June 2007, the undersigned concludes Claimant currently has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders, as further discussed below: no restriction of activities of daily living: mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. While Claimant may have had additional limitations prior to June 2007 stemming from his substance use disorder, pursuant to section 223(d)(2) and 1614(a)(3)(j) of the Social Security Act, Claimant would not be found disabled if a substance use disorder was a contributing factor material to the determination of disability.

**4. Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

As discussed above, Dr. Samuel Landau, impartial medical expert, opined Claimant's AIDS did not meet or medically equal listing section 14.08. The undersigned finds this opinion to be

**10**



Rocky Lamont Palmer                                     Page 6 of 6

credible and gives the opinion weight based on supportability with medical signs and laboratory findings, consistency with the record, and area of specialization. Dr. David Glassmire, psychiatrist and impartial medical expert, opined Claimant had only mild to moderate mental functional limitations. Given these limitations, Claimant does not have a mental impairment that meets or medically equals listing criteria. The undersigned also finds the opinion of Dr. Glassmire to be credible and gives the opinion weight based on supportability with medical signs and laboratory findings, consistency with the record, and area of specialization.

**5. After careful consideration of the entire record, the undersigned finds Claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, Claimant is able to occasionally lift and carry twenty pounds and frequently lift and carry ten pounds. Claimant can sit for about six hours and can stand and walk for about two hours in an eight-hour workday with normal breaks. He is precluded from balancing and climbing ladders, ropes, and scaffolds. He must avoid work at heights and work around motorized or unprotected machinery. Claimant is limited to performing work with three step instructions, occasional non-intense public contact, and no hypervigilance.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

After considering the evidence of record, the undersigned finds Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

Claimant essentially alleges disability because of AIDS with constant and persistent fatigue. The medical evidence confirms Claimant has been diagnosed with AIDS and he suffers from fatigue and depression. Drs. Thuy Nguyen and Mark Peterson, treating sources, have reported Claimant's subjective complaints of fatigue and depression. These sources assessed Claimant as limited to less than sedentary work and having marked to extreme mental limitations. Yet, it appears these assessments are largely based on Claimant's subjective complaints, and the objective medical evidence fails to support Claimant's allegations and these assessments (Exhibits 13F, 14F). Specifically, Dr. Nguyen's treatment records document minimal objective signs and often indicate Claimant was doing well without significant complaints. Similarly, Dr. Peterson's treatment records suggest Claimant was functioning well, aside from a period around April and May 2007. Of note, the medical evidence indicates Claimant was still using alcohol, marijuana, and cocaine. Further, laboratory testing confirms Claimant's AIDS immediately responded well to medication. Consultative examiners reported Claimant had fairly normal physical and mental status examinations, and medical experts concluded the objective evidence failed to support Claimant's allegations.

**11** 

Rocky Lamont Palmer ████████

Finally, there are questions regarding Claimant's credibility. Claimant denied a history of drug use at the psychiatric consultative examination, denied a history of drug and alcohol use at the first hearing, and claimed to have last used drugs and alcohol about a year prior to the second hearing (Exhibit 7F). The medical evidence indicates Claimant has a history of alcohol and drug use and Claimant was using alcohol, marijuana, and cocaine at least until May 2007 (Exhibits 11F, 16F, 17F). Additionally, Claimant has repeatedly alleged severe breathing difficulties, but the evidence establishes Claimant continues to smoke cigarettes. One would expect Claimant would have stopped smoking if his breathing difficulties were as severe as alleged.

In short, while the medical evidence unfortunately establishes Claimant suffers from AIDS, the undersigned finds Claimant's allegations to be less than fully credible because his alleged limitations are not supported by the objective evidence and because there are recurrent discrepancies between Claimant's statements and the documented evidence of record. Similarly, the undersigned finds the statements of Claimant's mother to be similarly less than fully credible and likely colored by the love for and support of her son (Exhibit 17E).

As for the opinion evidence, as discussed above, the undersigned finds the opinions of Drs. Samuel Landau and David Glassmire, medical experts, to be fully credible. These opinions are given weight based on supportability with medical signs and laboratory findings, consistency with the record, and areas of specialization. Of note, the internal medicine consultative examiner and State agency medical consultants determined Claimant was limited to sedentary work (Exhibits 1F, 2F, 3F). The undersigned concludes Dr. Landau's assessment is generally consistent with these opinions as he included additional restrictions on standing and walking. Further, limiting Claimant to a similar range of sedentary work would not change the outcome of this decision. The undersigned gives limited weight to the opinions of Drs. Thuy Nguyen and Mark Peterson, treating sources, as these assessments appear largely based on Claimant's subjective complaints and are inconsistent with the objective medical evidence and the sources own treatment records, as discussed above (Exhibits 13F, 14F).

**6.   Claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

Claimant has past relevant work as a stock clerk, assembler, messenger, and groundskeeper. The impartial vocational expert testified that based on the residual functional capacity as defined, Claimant would not be able to perform this past work.

**7.   Claimant was born on November 19, 1964 and was 41 years old, which is defined as a younger individual age 18 to 44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.   Claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Claimant is "not disabled," whether or not Claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**12   EXHIBIT**

Rocky Lamont Palmer ███████████                            Page 8 of 8

**10.  Considering Claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider Claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If Claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon Claimant's specific vocational profile (SSR 83-11). When Claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If Claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If Claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.18. However, Claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with Claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as an electronics assembler (unskilled, light; 2,100 regionally, 40,000 nationally) and hand packer (unskilled, light; 37,000 regionally, 472,000 nationally). Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the <u>Dictionary of Occupational Titles</u>.

Based on the credible testimony of the vocational expert, the undersigned concludes that, considering Claimant's age, education, work experience, and residual functional capacity, Claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.  Claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

**13** EXHIBIT

Rocky Lamont Palmer ████████                              Page 9 of 9

## <u>DECISION</u>

Based on the application for a period of disability and disability insurance benefits filed on June 12, 2006, Claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income filed on June 12, 2006, Claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

_____
Mason D. Harrell Jr
Administrative Law Judge


_____
Date

**14 EXHIBIT**